United States District Court
Eastern District of Michigan
Southern Division

United States of America

    Plaintiff,

                                  No. 22-cr-20355

v.                                Hon. Matthew F. Leitman

Semaje Reffigee,

    Defendant,

**Government's Sentencing Memorandum**

### I.    Introduction

At the height of the Covid-19 pandemic, Defendant Semaje Reffigee abused her position of authority as an employee of the Michigan Unemployment Insurance Agency (MUIA) to (a) resume payments on claims that the state system had marked as fraudulent, (b) extend the payment period on claims, and (c) increase the amount to be paid on claims in exchange for kickback payments. In the midst of her employment for the very agency responsible for unemployment insurance benefits, Reffigee herself collected unemployment benefits. Reffigee's

1

actions resulted in a loss of $313,497.00 to the State of Michigan. Reffigee pled guilty to conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343; 1349. For the reasons stated in this memorandum, the government recommends that a sentence at the bottom of the guidelines is "sufficient, but not greater that necessary, to comply with the purpose of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

## II. Facts and Procedural History

In October 2020, Reffigee began working for the state of Michigan's Unemployment Insurance Agency (MUIA) as a contractor in a telework capacity to address the influx of Pandemic Unemployment Assistance (PUA) claims filed during the pandemic. (PSR at ¶ 14.) Reffigee took advantage of her position within MUIA to access claims outside her work stream that had been flagged as fraudulent, and remove fraud stops that had been placed on the claims and/or extend the benefit period and increase the amount paid out on the claims. (PSR at ¶¶ 13, 15.) Reffigee received kickback payments in exchange for modifying these claims. (PSR at ¶¶ 17, 72.) Reffigee had no legitimate reason to access or approve these claims. (PSR at ¶ 15.)

Reffigee also applied for and collected unemployment insurance benefits in her own name during the period that she was gainfully employed with MUIA – the very agency responsible for properly outlaying PUA funds. (PSR at ¶ 16.)

Reffigee's actions resulted in a loss to the State of Michigan of approximately $313,497.00.

- $125,000 on claims Reffigee altered by removing payment stops on claims that that MUIA system had detected as fraudulent;
- $150,000 on claims that Reffigee manipulated to extend the benefit period and increase the amount due to be paid; and
- $9,000 on claims that Reffigee filed in her own name while gainfully employed at MUIA.

(PSR at ¶¶ 15-18.)

### III. Section 3553(a) factors warrant a guideline sentence.

The Supreme Court has noted that, in formulating the Sentencing Guidelines, the U.S. Sentencing Commission's goal is to carry out the objectives set out in 18 U.S.C § 3553(a). *United States v. Rita*, 511 U.S. 338 (2007). While advisory in nature, the Guidelines remain an

important factor in fashioning a just and right sentence. This is because "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve sections 3553(a)'s objectives." *Id.* at 350. Moreover, the guidelines "should be the starting point and the initial benchmark" for choosing a defendant's sentence. *Gall v. United States*, 553 U.S. 38, 49 (2007).

### a. The nature and Circumstances of the offense.

Reffigee's actions frustrated the federal government and State of Michigan's attempts to support unemployed Americans who lost their jobs during the Covid-19 pandemic. Reffigee took advantage a unique historical moment that required the government to take rapid action during an unprecedented crisis. There was a finite pool of money available to struggling individuals and small businesses. Fraudulent claims like those filed and modified by Reffigee (a) decreased the amount of money available to those who were legitimately entitled to benefits, (b) bogged down state unemployment systems generally – causing delays in payment processing for those legitimately entitled to benefits, and (c) undermined public trust in the necessity and efficacy of crucial

government programs intended to help unemployed Americans at their most vulnerable.

Reffigee's conduct is particularly notable given that she abused her position of authority with the State of Michigan to further these fraudulent claims in exchange for kickback payments. Reffigee's conduct and self-enrichment did not stop there. While employed with MUIA, she collected $9,000 in unemployment insurance funds that she was not entitled to receive.

### b. The history and characteristics of the defendant.

To her credit, Reffigee accepted responsibility for this offense early on in this case. She also demonstrated understanding of her misconduct and remorse in her statements to Probation. (PSR at ¶ 40.) This is also her first conviction.

### c. Seriousness of the offense, promotion of respect for the law, and just punishment for the offense.

This is a very serious offense. Fraudulent claims for Covid-19 benefits took money away from vulnerable citizens legitimately entitled to those funds after losing employment as a result of the pandemic. Filing fraudulent claims undermined faith in the government's ability to help

those who genuinely needed assistance. Reffigee's conduct is even more serious given that she took the additional steps of filing her own claims while employed with the MUIA and abused her employment to cause additional claims on over 35 fraudulent claims. A sentence at the bottom of the guidelines would reflect the seriousness of this offense.

A sentence at the bottom of the guidelines would also promote respect for the law and provide just punishment for Reffigee. According to JSIN, over the last five years, 90% of the 707 defendants with a primary guideline under section 2B1.1, final offense level of 18, and criminal history category of I received a sentence of imprisonment. (PSR ¶ 80.) Per JSIN, the average length of imprisonment for these 633 defendants was 19 months, while the median length of imprisonment was 20 months. (*Id.*) This data from JSIN does not delineate defendants sentenced for pandemic related fraud, which may be viewed as a particularly exploitative offense.

### d. Adequate deterrence and protection of the public.

A bottom of the guidelines sentence is appropriate to deter Reffigee from committing additional crimes. The public also deserves to be free

6

from fraud in public assistance programs, and bad actors in state government.

## IV. Conclusion

Pursuant to the reason stated above, the government recommends a sentence of 27 months imprisonment.

Respectfully submitted,
Dawn N. Ison
United States Attorney

*s/ Sarah Youngblood*
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Sarah.Youngblood@usdoj.gov
(313) 226-9581
Bar No. IL 6324888

Dated: July 10, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2023, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing all counsel of record via electronic mail.

*s/ Sarah Youngblood*
Sarah Youngblood
Assistant United
States Attorney
